1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| HOPE LO, | ) Case No.: 1:10-cv-01322 JLT |
| | ) |
| Plaintiff, | ) ORDER DIRECTING REMAND PURSUANT |
| | ) TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| v. | ) |
| | ) ORDER DIRECTING ENTRY OF JUDGMENT |
| MICHAEL J. ASTRUE, | ) IN FAVOR OF PLAINTIFF HOPE LO AND |
| Commissioner of Social Security, | ) AGAINST DEFENDANT MICHAEL J. |
| | ) ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) SECURITY |
| | ) |

17          Hope Lo ("Plaintiff") asserts she is entitled to disability insurance benefits and supplemental

18   security income under Titles II and XVI of the Social Security Act.  Plaintiff argues the

19   administrative law judge ("ALJ") erred in his evaluation of medical evidence regarding her mental

20   impairment and failed to support his findings with substantial evidence.  In addition, Plaintiff asserts

21   the ALJ erred in evaluating the credibility of her subjective complaints.  Therefore, Plaintiff seeks

22   judicial review of the administrative decision denying her claim for benefits.  For the reasons set

23   forth below, the Court remands this matter for further proceedings.

24                                    **PROCEDURAL HISTORY**[1]

25          Plaintiff filed applications for disability insurance benefits and supplemental security income

26   on February 12, 2003, which were denied initially and upon reconsideration.  AR at 188.  Plaintiff

27
28

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1   requested a hearing, which was held before an ALJ on September 24, 2004. *Id.* at 188, 635.  The

2   ALJ determined Plaintiff's hepatitis B was a severe impairment, but that Plaintiff was not disabled as

3   defined by the Social Security Act. *Id.* at 188, 191.  Therefore, the ALJ issued a decision denying

4   benefits on February 10, 2005. *Id.* at 188-92.  Plaintiff did not appeal the decision of the ALJ, and

5   the ALJ's determination became the decision of the Commissioner of Social Security

6   ("Commissioner").

7           On April 25, 2005, Plaintiff filed new applications for disability insurance benefits and

8   supplemental security income, alleging disability beginning February 28, 2002.  AR at 17, 256.  The

9   Social Security Administration denied her claims initially on December 10, 2005 and upon

10  reconsideration on November 7, 2006. *Id.* at 17.  After requesting a hearing, Plaintiff testified before

11  an ALJ on August 27, 2007. *Id.* at 17, 654.  The ALJ determined Plaintiff was not disabled as

12  defined by the Social Security Act because she could perform her past relevant work. *Id.* at 17-23.

13  Plaintiff requested a review by the Appeals Council of Social Security, which denied review of the

14  ALJ's decision on May 25, 2010. *Id.* at 9-11.  Therefore, the ALJ's determination became the

15  decision of the Commissioner.

16                                    **STANDARD OF REVIEW**

17          District courts have a limited scope of judicial review for disability claims after a decision by

18  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

19  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

20  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

21  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

22  standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y*

23  *of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

24          Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

25  reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

26  389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938).  The record as a whole

27  must be considered, as "[t]he court must consider both evidence that supports and evidence that

28  detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.* In making these findings, the ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 404.1527, 404.1529, 416.927.

A.   Relevant Medical Evidence

*Physician's Opinions*

Dr. Shireen Damania performed a completed a consultative psychiatric evaluation on July 15, 2005.  AR at 356-59.  Plaintiff reported an inability to focus, remember, concentrate, or follow directions.  *Id.* at 356.  Also, Plaintiff indicated she attempted to "kill herself by driving the car into a

pole" on two occasions.  *Id.*  Plaintiff believed her counseling sessions every two weeks at Fresno County Mental Health Department was "somewhat helpful."  *Id.* at 357.  She stated medication "help[ed] her a little bit with sleep, but the depression persist[ed]."  *Id.*  Dr. Damania observed Plaintiff was soft-spoken, depressed, and tearful.  *Id.* at 358.  Dr. Damania did not find evidence of hallucinations, delusions, or a thought disorder.  *Id.*  Following the examination, Dr. Damania opined Plaintiff's "[a]ttention span was somewhat brief and distractible."  *Id.*  Dr. Damania concluded, "At the present time the claimant would have difficulty responding appropriately to coworkers, supervisors, and the public.  She would have difficulty responding appropriately to usual work situations with attendance and safety and dealing with changes in a routine work setting."  *Id.* at 359. According to Dr. Damania, there was no indication that Plaintiff "was attempting to enhance her symptoms," and Plaintiff was "entirely motivated to feel better, to continue with her psychotropic medications and psychiatric counseling."  *Id.*

Dr. Archimedes Garcia completed a mental residual functional capacity assessment form on August 19, 2005.  AR at 364-66.  Dr. Garcia opined Plaintiff was moderately limited in the several areas of functioning, including the following abilities: to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual; to work without special supervision; and to complete a normal workday and work week without interruptions from psychologically-based symptoms.  *Id.* at 355-56.  Further, he believed Plaintiff was moderately limited in several areas of social interaction and adaptation.  *Id.* at 365.  For example, Dr. Garcia opined Plaintiff was "not able to interact appropriately" with others or "to respond appropriately to changes [and] hazards in the workplace."  *Id.* at 366.  Dr. Garcia concluded Plaintiff was "able to understand [and] remember very short [and] simple instructions," but was unable to maintain attention or concentration for two-hour increments or perform at a consistent pace.  *Id.*

On October 12, 2005, Dr. Uwe Jacobs reviewed Plaintiff's medical records and noted that they reflected Plaintiff's ongoing symptoms of depression and anxiety.  AR at 381.  Dr. Jacobs opined there that the records did not support a change in psychiatric status after the decision by an ALJ in February 2005.  *Id.*  According to Dr. Jacobs, "The symptoms and complaints [were] the

1  same as before" and there was "no substantial change in mental status." *Id.*  Therefore, Dr. Jacobs

2  concluded Plaintiff's claim should be denied.  *Id.*

3        *Mental Health Treatment Notes*

4        In May 2005, Plaintiff began to receive treatment from Fresno County Mental Health.  *See*

5  AR at 490.  Pao Vang, a social worker, completed a comprehensive assessment at Plaintiff's initial

6  appointment on May 5, 2005.  *Id.*  at 428-33.  Plaintiff complained that she was "over whelmed (sic)

7  with her health issues . . ., family problems, fatigue, helplessness, hopelessness, and a lack of

8  motivation to perform household chores." *Id.* at 428.  She reported that she had "frequent

9  nightmares about old boyfriends about 4-5 times/ week," and had insomnia. *Id.* at 430.  Plaintiff had

10  "fair" memory, judgment, and insight. *Id.* at 431.

11        Treatment notes from Fresno County Mental health indicate Plaintiff's goal in therapy was to

12  "decrease [her] depression and crying spells."  AR at 494.  In group therapy sessions, Plaintiff

13  discussed topics such as her relationships with her family, how depression affected her physical

14  health, money, the importance of taking medication, responsibilities, and domestic violence. *See,*

15  *e.g., id.* at 487, 488, 497, 504, 507, 510, 525, and 536.  In individual therapy sessions, Plaintiff

16  discussed the importance of learning to live with her depression and pain, and she was encouraged to

17  do simple chores around the house in order "to be more functional." *See, e.g., id.* at 514, 524.

18  Frequently, Plaintiff complained of feelings of depression, helplessness, and hopelessness. *See, e.g.,*

19  *id.* at 488, 500, 506, and 511.

20  B.   Hearing Testimony

21        *Plaintiff's Testimony*

22        Plaintiff testified before an ALJ on August 27, 2007, at which time she was 37 years old.  AR

23  at 654, 660.  Plaintiff reported that she had completed high school in the United States, but did not

24  have any vocational training or college credits. *Id.* at 663.  Plaintiff reported she worked as a

25  teacher's aide in 1990, an assistant in an educational center from 1992 to 1994, an assembly line

26  worker, and a caretaker in 2001. *Id.* at 663-67.  When a teacher's aide, Plaintiff said she worked

27  part-time in a classroom and assisted "the English learner students" in elementary school. *Id.* at 666.

28  Plaintiff testified that she stopped working in the classroom to take a full-time position as an

5

assistant at an education center where she set up the classroom and equipment. *Id.* at 665-66. After moving, Plaintiff said she learned to do an assembly job, where she built circuit boards for computers. *Id.* at 664-65. Plaintiff stated she last worked in 2001 as a part-time caregiver for her grandmother, but stopped assisting her because Plaintiff "got really sick," weak, and depressed. *Id.* at 663-64, 667.

According to Plaintiff, her "sickness got worse, especially [her] depression" since she received an unfavorable decision from an ALJ on February 11, 2005. AR at 667. When asked to explain how her symptoms increased, Plaintiff testified: "I cry a lot, and that hurts my face, like so much pressure or irritation on my face, my eyes, and I have a lot of headache and a lot of backache. My fingers are always cold, and I feel tingling and numbness, and I'm unable to sleep at night." *Id.* In addition, Plaintiff said her depression increased because she had an "abusive relationship" with the father of her children, who beat her in April or May of 2005. *Id.* at 667-68.

Plaintiff reported that she received treatment for her depression from Dr. Kaleka and Fresno County Mental Health. AR at 668. Plaintiff said she went to County for mental health treatment for about three or three and a half years, and went to group therapy each week. *Id.* at 668-69. Also, she said she had individual therapy when she was "really depressed" and requested individual sessions. *Id.* at 669. She stated Dr. Kaleka treated her depression by giving her medication, which did not take the depression away completely. *Id.* at 669-70. Plaintiff reported that she cried every day, and had suicidal thoughts "two or three times a month." *Id.* at 670. In addition, Plaintiff stated she did not drive because she tried to kill herself while driving. *Id.* at 662. Plaintiff did not believe she was a "worthwhile person" and reported she felt hopeless. *Id.* at 672. Plaintiff said she no longer had friends because she felt ashamed and "just want[ed] to be alone," and she did not have hobbies or interests that made her happy. *Id.*

In addition, Plaintiff reported that she had difficulty with concentration. AR at 672. As an example, Plaintiff said she would forget that she was cooking, and burned pots and pans. *Id.* Plaintiff said she forgot to pay her bills as well, and her sister, Molly, came to help pay bills every month. *Id.* at 672-73. Also, her sister came "most of the week" to help take care of and play with

1    Plaintiff's three children, who were ages five, eight, and ten. *Id.* at 661, 673. Further, Plaintiff said

2    her sister did the grocery shopping for her family. *Id.* at 676.

3         Plaintiff stated that her daily activities included watching television while her children played

4    in the room, eating, showering, and sleeping." AR 673-74. Plaintiff said her energy level was "[n]ot

5    good," and reported "I feel weak, and I feel tired." *Id.* at 677. Plaintiff stated she took unscheduled

6    naps at "random times" about "three times a day like two hours every time." *Id.* at 674-75.

7         Plaintiff believed that she would not be able to work seated at a table eight hours a day

8    because she felt weak and "can't concentrate." AR at 681. She estimated she could sit for "like 20

9    to 30 minutes [at] the most," and felt the option to stand would not help because it was difficult for

10   her to stand. *Id.*

11       *Vocational Expert Testimony*

12       Following Plaintiff's testimony, vocational expert ("VE') Judith Najarian testified at the

13   hearing. The VE characterized Plaintiff's past work as a "teacher's aide II," "circuit board

14   assembler," and "companion" as light, semi-skilled work under the DOT.[2] AR at 682-84. However,

15   the VE observed that as the assembly work was sedentary as Plaintiff performed it because "she had

16   the opportunity to sit on this job." *Id.* Then, the ALJ posed hypothetical questions to the VE.

17       First, the ALJ asked the VE to consider an individual the same age, education, and work

18   experience as Plaintiff. AR at 684. The individual required additional breaks totaling about one

19   hour per day, in addition to the customary two breaks and a meal period. *Id.* The VE opined such a

20   person could not perform Plaintiff's past relevant work, or any other jobs in the regional or national

21   economy. *Id.*

22       Next, the VE considered an individual who could perform jobs of a medium exertion and

23   "lift and carry 50 pounds occasionally, 25 pounds frequently; stand and walk a total of six hours and

24   sit for a total of six hours in an eight-hour day." AR at 684-85. The VE believed this individual

25   would be able to perform Plaintiff's past relevant work. *Id.* at 85.

26   _____

27       [2] The *Dictionary of Occupational Titles* ("DOT") by the United States Dept. of Labor, Employment & Training
     Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry v.*

28   *Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements, and may
     be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

1   If an individual could 'lift and carry 20 pounds occasionally, ten pounds frequently; stand and

2   walk a total of two hours and sit a total of six hours in an eight-hour day," the VE concluded the

3   person would be able to perform Plaintiff's past work as a circuit board assembler.  AR at 685.

4   However, the VE specified that was only as Plaintiff performed the work, and not as described in the

5   DOT.  *Id*.  With an additional limitation that the worker could not maintain "focused attention and

6   concentration in two-hour increments through an eight-hour day," the VE concluded the worker

7   could not perform Plaintiff's past relevant work, or any other work.  *Id*.

8   C.   Third Party Statement

9   Plaintiff's sister, Molly Lo, completed a third-party function report on May 17, 2005.  AR at

10   303-11.  Ms. Lo reported that she saw Plaintiff three times a week, for one to two hours each time.

11   *Id*. at 303.  She stated Plaintiff ate, watched television, and slept throughout the day.  *Id*.  Ms. Lo

12   reported Plaintiff's husband took care of her children, and that Plaintiff was unable to take care of

13   her kids and go to work due to her illness.  *Id*. at 304.  In addition, Ms. Lo reported that Plaintiff only

14   cooked one or two times each week, and did not do any household chores.  *Id*. at 305. Ms. Lo

15   reported Plaintiff did not spend time with others, and did not go places on a regular basis.  *Id*. at 307.

16   According to Ms. Lo, Plaintiff required reminders to take care of personal needs, dress

17   appropriately, take her medication, and go to the doctor.  AR at 305, 307.  In addition, she believed

18   Plaintiff was not able to pay bills, count change, handle a savings account, or use a checkbook.  *Id*. at

19   306.  Ms. Lo reported Plaintiff's husband handled her money because she was "forgetful" and forgot

20   how much money she had.  *Id*. at 306-07.

21   Further, Ms. Lo believed Plaintiff's illness affected her ability to lift, sit, talk, stand, complete

22   tasks, walk, follow instructions, get along with others, and her memory and concentration.  AR at

23   308.  Ms. Lo noted Plaintiff could lift only five to ten pounds; stand, walk, or sit less than thirty

24   minutes; walk one or two blocks before needing to rest for five minutes; and concentrate for ten to

25   fifteen minutes.  *Id*.  According to Ms. Lo, Plaintiff could not follow instructions well or handle

26   stress.  *Id*. at 308-09.  Also, Ms. Lo opined Plaintiff should not drive because "[s]he might hurt

27   herself."  *Id*. at 306.

28

On June 9, 2007, Ms. Lo supplemented her statement with a letter.  AR at 350.  She reported that her sister's condition was worse than anyone realized, and that Plaintiff had "become very weak and unable to complete any tasks."  *Id.*  Further, Ms. Lo reported:

> [S]he cries a lot and rarely goes anywhere except to see her doctors.  I have to help her with her family on making sure that all the bills are paid because she is always tire[d], forgetful, and can't concentrate.  I know for a fact that she has trouble sleeping at night because I spend at least three nights a week at her apartment.  On many occasions she tries to cook and forgets that she is cooking and the pots or food would get burned.

*Id.*  Ms. Lo reported that she assisted with taking care of the children, as did the children's grandmother.  *Id.*  According to Ms. Lo, Plaintiff tried to kill herself "several times" by causing car accidents, and no longer drove.  *Id.*

D.  The ALJ's Findings

As an initial matter, the ALJ noted, "Administrative Law Judge Joanne Birge found [Plaintiff] retained the residual functional capacity to perform medium work, and was 'not disabled.'"  AR at 17.  The ALJ determined a presumption of continuing non-disability was applicable because Plaintiff "has not presented any new or material evidence warranting a change in her residual functional capacity."  *Id.*  However, the ALJ continued his findings with the five-step evaluation process.

First, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her alleged impairment date of February 28, 2002.  AR at 19.  Next, the ALJ found Plaintiff has a severe impairment of chronic hepatitis B, which did not meet or medically equal a listing.  *Id.* at 19, 21.  The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and carry 50 pounds occasionally and 25 pounds frequently; to stand and walk a total of 6 hours in an 8-hour work day; and to sit a total of 6 hours in an 8-hour work day."  *Id.* at 21.  With this RFC, the ALJ concluded Plaintiff was capable of performing her past relevant work as a circuit board assembler, teacher's aid II, and companion.  *Id.* at 23.  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  *Id.* at 23-24.

///

///

9

# DISCUSSION AND ANALYSIS

A.  The ALJ erred in applying the presumption of continuing non-disability.

The Ninth Circuit has held the principles of res judicata apply to administrative hearings. *Chavez v. Bowen*, 844 F.3d 691, 693 (9th Cir. 1998).  A presumption of continuing non-disability arises in "cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Act as a prior claim on which there has been a final decision . . . that the claimant is not disabled."  Social Security Acquiescence Ruling 97-4(9), 1997 SSR LEXIS 4 at *7 (explaining the application of *Chavez*); *see also Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000) ("In general, when the Commissioner has denied an earlier application . To overcome the presumption, a plaintiff must prove "changed circumstances," such as "a change in the claimant's age category . . ., an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment not previously considered or a change in the criteria for determining disability." *Id.* at *8; *see also Chavez*, 844 F.3d at 693 (finding attainment of advanced age constituted a changed circumstance).  Therefore, to overcome the presumption that she was not disabled, and that her mental impairment was not severe, Plaintiff was required to show changed circumstances.

In this case, the ALJ applied the presumption of continuing non-disability to Plaintiff's case because he determined she "has not presented any new or material evidence warranting a change in her residual functional capacity."  AR at 17.  Notably, in a prior decision the ALJ concluded Plaintiff's mental impairment was not a severe impairment:

> [T]he claimant alleges depression, but I find this condition is managed by medication and has minimal, if any, effect on the claimant's ability to work.  Psychiatric complaints are documented in Dr. Kaleka's treatment notes, but these records indicate that symptoms are medically monitored and well managed and *the claimant has not required any counseling or therapy beyond medication.*

*Id.* at 189 (emphasis added).  Here, Plaintiff has shown she has received individual and group therapy from Fresno County Mental Health since 2005, and established a change in circumstances from those presented to the previous ALJ.  *See id.* at 490.  Thus, the ALJ's application of the presumption was error, but "the ALJ did not strictly apply the presumption of continuing non-disability because he continued further with his review and completed the five step sequential

1   process." *Jones v. Astrue*, 2010 U.S. Dist. LEXIS 133808 at *23) (E.D. Cal. Dec. 9, 2010).  Thus, it

2   is necessary to review the ALJ's findings to determine whether the application of the presumption

3   was a harmless error.  *Id.*, citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th

4   Cir. 2004).

5   B.   The ALJ erred at step two of his inquiry and failed to properly reject the opinion of Dr. Damania,

6   an examining physician.

7        The inquiry at step two is a *de minimus* screening for severe impairments "to dispose of

8   groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) citing *Bowen v. Yuckert*,

9   482 U.S. 137, 153-54 (1987).  The purpose is to identify claimants whose medical impairment makes

10  it unlikely they would be disabled even if age, education, and experience are considered.  *Bowen*,

11  482 U.S. at 153 (1987).  At step two, a claimant must make a "threshold showing" that (1) she has a

12  medically determinable impairment or combination of impairments and (2) the impairment or

13  combination of impairments is severe.  *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).

14  Thus, the burden of proof is on the claimant to establish a medically determinable severe

15  impairment.  *Id.*; *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009)

16  ("The burden of proof is on the claimant at steps one through four…").

17       In this case, at step two, the ALJ determined Plaintiff had a severe impairment of "chronic

18  hepatitis B."  AR at 19.  The ALJ concluded Plaintiff's mental impairment was not severe because it

19  "does not cause more than minimal limitation in her ability to perform basic mental work activities."

20  *Id.* at 20.  He acknowledged the opinion of Dr. Damania, who believed Plaintiff "would have

21  difficulty concentrating for two-hour increments in a work-like setting; responding appropriately to

22  co-workers, supervisors and the public; responding appropriately to usual work situations with

23  attendance and safety; and dealing with changes in a routine work setting."  *Id.*  However, the ALJ

24  rejected this opinion because Dr. Damania was not Plaintiff's treating physician and was "less able to

25  accurately evaluate [Plaintiff's] long-term functional capacity."  *Id.*

26       Plaintiff asserts she met her burden to establish a severe mental impairment, and that the ALJ

27  failed to provide substantial evidence to support his findings that Plaintiff's mental impairment was

28  not severe.  (Doc. 11 at 8-10; Doc. 15 at 3).  Plaintiff argues that the opinion of Dr. Damania

1   demonstrated that Plaintiff suffered from a severe impairment, and the ALJ rejected this opinion for

2   a legally insufficient reason. *Id.* at 10.

3          Generally, a physician's opinion is not binding upon the ALJ when the ALJ provides clear

4   and convincing reasons for rejecting an opinion. *Coats v. Heckler*, 733 F.3d 1338, 1340 (9th Cir.

5   1984).  Importantly, an ALJ *must* consider the opinions of examining physicians. *Lester v. Chater*,

6   81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. §§ 404.1527, 416.927.  Therefore, the fact that Dr.

7   Damania was not Plaintiff's treating physician and offered an opinion based upon a single evaluation

8   is not a clear and convincing reason for rejecting the opinion. *See Hall v. Astrue*, 2011 U.S. Dist.

9   LEXIS 89136 at * 26 (E.D. Cal. Aug. 11, 2011).

10         Dr. Damania's opinion was based upon independent clinical findings and testing of

11  Plaintiff's cognitive functioning and mental abilities. *See* AR at 358.  As such, the opinion may be

12  substantial evidence supporting a finding that Plaintiff's mental impairment was severe. *Orn v.

13  Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

14  2001).  Further, Dr. Garcia, a non-examining physician, opined that Plaintiff was unable to maintain

15  attention or concentration for two-hour increments or perform at a consistent pace.  AR at 366.  This

16  is consistent with Dr. Damania's opinion and may serve as substantial evidence also. *Andrews v.

17  Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995) (the opinions of non-examining physicians "may serve

18  as substantial evidence when they are supported by other evidence in the record and are consistent

19  with it").  However, the ALJ failed to address Dr. Garcia's opinion in his decision.

20  C.   Remand is appropriate in this matter.

21         The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or

22  to order immediate payment of benefits is within the discretion of the district court. *Harman v.

23  Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an

24  administrative agency determination, the proper course is to remand to the agency for additional

25  investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v.

26  Ventura*, 537 U.S. 12, 16 (2002).  Generally, an award of benefits is directed when:

27         (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
           (2) there are no outstanding issues that must be resolved before a determination of

28

12

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed.  *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to properly evaluate the opinions of physicians regarding Plaintiff's mental impairment.  The opinions of Dr. Damania and Dr. Garcia indicate Plaintiff's mental impairment is severe, and by rejecting the opinions at step two the ALJ failed to make a finding regarding Plaintiff's mental residual functional capacity.  Consequently, the matter should be remanded for the ALJ to evaluate the medical opinions.

<u>**CONCLUSION**</u>

For all these reasons, the Court concludes the ALJ erred in his disability determination. The ALJ failed to find changed circumstances rebutting the presumption of continuing non-disability.  In addition, the ALJ failed to properly evaluate the medical evidence, and erred at step two of his evaluation.  As a result, his opinion failed to apply the correct legal standards and should not be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.  Further, because the matter is remanded due to these errors, the Court makes no findings regarding the propriety of the ALJ's adverse credibility determination.

Accordingly, **IT IS HEREBY ORDERED**:

1.      Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further proceedings consistent with this decision; and

2.      The Clerk of Court IS DIRECTED to enter judgment in favor of Plaintiff Hope Lo and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   September 20, 2011                               /s/ Jennifer L. Thurston
                                                       UNITED STATES MAGISTRATE JUDGE